UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

| | |
|---|---|
| ROBERT WILHELM, <br><br> Plaintiff, <br><br> v. <br><br> NET ELEMENT, INC., OLEG FIRER, JON NAJARIAN, JOHN ROLAND, and TODD RAARUP, <br><br> Defendants. | Case No._____ <br><br> **COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS** <br><br> JURY TRIAL DEMANDED |

Plaintiff Robert Wilhelm ("Plaintiff"), by and through his undersigned counsel, for his complaint against defendants, alleges upon personal knowledge with respect to himself, and upon information and belief based upon, *inter alia*, the investigation of counsel as to all other allegations herein, as follows:

**NATURE AND SUMMARY OF THE ACTION**

1. This action is brought by Plaintiff against Net Element, Inc. ("Net Element" or the "Company") and the members of Net Element's Board of Directors (the "Board" or the "Individual Defendants") for their violations of Sections 14(a) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. §§ 78n(a), 78t(a), and U.S. Securities and Exchange Commission ("SEC") Rule 14a-9, 17 C.F.R. § 240.14a-9, and to enjoin the vote on a proposed transaction, pursuant to which Net Element will merge with Mullen Automotive, Inc. ("Mullen Automotive") and Mullen Technologies, Inc. ("Mullen Technologies," together with Mullen Automotive, "Mullen"), through Net Element's subsidiary Mullen Acquisition, Inc. ("Merger Sub") (the "Proposed Transaction").

2. On August 5, 2020, Net Element issued a press release announcing that it had entered into an Agreement and Plan of Merger with Mullen dated August 4, 2020 (as amended, the "Merger Agreement"). Under the terms of the Merger Agreement, Merger Sub will merge with and into Mullen Automotive, with Mullen Automotive surviving as a wholly owned subsidiary of Net Element. Immediately prior to the consummation of the merger, Net Element will divest itself of its payments-processing business and portfolio to RBL Capital Group LLC. Upon completion of the Proposed Transaction, Net Element will become the parent company of Mullen Automotive and Net Element shareholders will own 15% and Mullen shareholders will own 85% of the issued and outstanding shares of the combined company.

3. On July 27, 2021, Net Element filed a Schedule 14A Definitive Proxy Statement (as amended, the "Proxy Statement") with the SEC. The Proxy Statement, which recommends that Net Element stockholders vote in favor of the Proposed Transaction, omits or misrepresents material information concerning, among other things: (i) Net Element's and Mullen's financial projections, which are wholly omitted, and the data and inputs underlying the financial valuation analyses that support the fairness opinion provided by the Company's financial advisor, Alexander Capital, LP ("Alexander Capital"); and (ii) Alexander Capital's potential conflicts of interest. The failure to adequately disclose such material information constitutes a violation of Sections 14(a) and 20(a) of the Exchange Act as Net Element stockholders need such information in order to make a fully informed decision whether to vote in favor of the Proposed Transaction.

4. In short, unless remedied, Net Element's public stockholders will be forced to make a voting decision on the Proposed Transaction without full disclosure of all material information concerning the Proposed Transaction being provided to them. Plaintiff seeks to enjoin the

stockholder vote on the Proposed Transaction unless and until such Exchange Act violations are cured.

**JURISDICTION AND VENUE**

5. This Court has jurisdiction over the claims asserted herein for violations of Sections 14(a) and 20(a) of the Exchange Act and SEC Rule 14a-9 promulgated thereunder pursuant to Section 27 of the Exchange Act, 15 U.S.C. § 78aa, and 28 U.S.C. § 1331 (federal question jurisdiction).

6. This Court has jurisdiction over the defendants because each defendant is either a corporation that conducts business in and maintains operations within this District, or is an individual with sufficient minimum contacts with this District so as to make the exercise of jurisdiction by this Court permissible under traditional notions of fair play and substantial justice.

7. Venue is proper in this District pursuant to 28 U.S.C. § 1391 because defendants are found or are inhabitants or transact business in this District. Moreover, Net Element's common stock trades on the Nasdaq Capital Market, which is headquartered in this District, rendering venue in this District appropriate.

**THE PARTIES**

8. Plaintiff is, and has been at all times relevant hereto, a continuous stockholder of Net Element.

9. Defendant Net Element is a Delaware corporation, with its principal executive offices located at 3363 NE 163rd Street, Suite 605, North Miami Beach, Florida 33160. The Company is a technology and value-added solutions group that supports electronic payments acceptance in a multi-channel environment including point-of-sale ("POS"). Net Element's common stock trades on the Nasdaq Capital Market under the ticker symbol "NETE."

10. Defendant Oleg Firer ("Firer") has been Chief Executive Officer ("CEO") and a director of the Company since April 16, 2013, and Executive Chairman of the Board since November 27, 2018.

11. Defendant Jon Najarian ("Najarian") has been a director of the Company since March 8, 2018.

12. Defendant John Roland ("Roland") has been a director of the Company since July 10, 2020.

13. Defendant Todd Raarup ("Raarup") has been a director of the Company since July 23, 2020.

14. Defendants identified in paragraphs 10-13 are referred to herein as the "Board" or the "Individual Defendants."

## OTHER RELEVANT ENTITIES

15. Mullen is a California corporation with its principal executive offices located at 1405 Pioneer St, Brea, California 92821. Mullen is a Southern California-based licensed electric vehicle manufacturer with international distribution that operates in various verticals of businesses focusing in the automotive industry: Mullen Automotive, Mullen Energy, Mullen Auto Sales, Mullen Funding Corp., and CarHub. Each of these divisions provides Mullen with diversity of different products and services within the automotive industry.

16. Merger Sub is a California corporation and wholly owned subsidiary of Net Element.

## SUBSTANTIVE ALLEGATIONS

**Background of the Company**

17. Net Element operates a payments-as-a-service transactional and value-added

services platform for small to medium enterprise ("SME") in the U.S. and selected emerging markets. The Company aims to grow transactional revenue by innovating SME productivity services using various technology solutions and Aptito, the Company's cloud-based, restaurant and retail POS solution. Internationally, Net Element's strategy is to leverage its omni-channel platform to deliver flexible offerings to emerging markets with diverse banking, regulatory and demographic conditions. The Company operates two business segments as a provider of North American Transaction Solutions and International Transaction Solutions.

18. Net Element offers a broad range of payment acceptance and transaction processing services that enable merchants of all sizes to accept and process over 100 different payment options in more than 120 currencies, including credit, debit, prepaid and alternative payments. The Company also provides merchants with value-added services and technologies including integrated payment technologies, POS solutions, fraud management, information solutions and analytical tools. Net Element is differentiated by its technology-centered value-added service offerings built around a payments ecosystem and diversified business model, which enables the Company to provide its varied customer base with a broad range of transaction-processing services from a single source across numerous channels and geographic markets.

19. On December 18, 2020, the Company announced its first quarter 2021 financial results. The Company achieved revenues of $23.8 million during the quarter, compared to revenues of $15.8 in the corresponding quarter of 2020. Net Element also reported net income attributable to common stockholders of approximately $0.3 million or $0.05 per share income for the three months ended March 31, 2021, as compared to a net loss of approximately $1.4 million or $0.33 per share loss for the three months ended March 31, 2020.

**The Proposed Transaction**

20. On August 5, 2020, Net Element issued a press release announcing the Proposed Transaction, which states, in relevant part:

> MIAMI, Aug. 05, 2020 -- Net Element, Inc. (NASDAQ: NETE) ("Net Element" or the "Company") today announced the execution of a definitive agreement to merge with privately-held Mullen Technologies, Inc. ("Mullen"), a Southern California-based electric vehicle company, in a stock-for-stock reverse merger in which Mullen's stockholders will receive a majority of the outstanding stock in the post-merger Company.
>
> **Highlighted Terms of the Definitive Merger Agreement:**
>
> Under the terms of the agreement, Net Element's wholly owned, newly formed subsidiary will acquire all the outstanding shares of Mullen. Upon completion of the merger, Net Element shareholders will own 15% and Mullen shareholders will own 85% of the issued and outstanding shares of the combined Company. Net Element has the right to acquire up to an additional 6.7% of the combined Company depending on the amount of loans from Net Element to Mullen prior to closing.
>
> Immediately prior to completion of the merger, Net Element will, subject to Net Element's stockholders' approval, divest itself of its payments-processing business and portfolio. The completion of the merger is subject to shareholder and NASDAQ approval, as well as other conditions referenced in the merger agreement. Upon closing of the merger, Net Element's current management team and board of directors will resign and be replaced by a management team led by David Michery, Mullen's founder, chairman and chief executive officer and the Mullen-nominated board of directors. The Company has obtained a fairness opinion satisfactory to its board of directors, and each company's board of directors has approved the execution of the merger agreement. Mullen's shareholders have approved the execution of the merger agreement and the transactions contemplated in such agreement.
>
> Additional details regarding the merger, including the complete merger agreement, may be found in Net Element's report on Form 8-K, which was filed with the Securities and Exchange Commission (SEC) today, August 5th, 2020, and may be obtained from the SEC website at https://sec.report/CIK/0001499961.
>
> "Our team at Mullen Technologies is very proud to take the next step in completing this acquisition of Net Element," stated David Michery, CEO and Founder of Mullen Technologies,Inc. "Mullen is dedicated to the development of environmentally friendly, affordable technology that will bring energy solutions to consumer products and communities in the near future. This acquisition provides the resources that Mullen can utilize to execute on its business model to integrate state-of-the-art, clean-battery technology into personal and commercial vehicles,

and eventually sustainable, reusable battery technology into everyday consumer products."

Founded in 2014, Mullen, through ICI (Independent Commercial Importers), expects to launch the Dragonfly K50, a luxury sports car, in the first half of 2021. Mullen currently operates seven retail locations throughout California, as well as one in Arizona. Several national and local events, from the Los Angeles Auto Show to the New York International Auto Show, have showcased Mullen automobiles and concept cars. Mullen's Dragonfly K50 won the Governor's Choice Award at the 2019 Balboa Bay Club's Classic Auto Show.

"We are excited to move forward with the proposed merger with Mullen Technologies. We are confident that this transaction will increase shareholder value in the long term," commented Oleg Firer, executive chairman of Net Element.

**The Proxy Statement Contains Material Misstatements and Omissions**

21.    The defendants filed a materially incomplete and misleading Proxy Statement with the SEC and disseminated it to Net Element's stockholders. The Proxy Statement misrepresents or omits material information that is necessary for the Company's stockholders to make an informed decision whether to vote their shares in favor of the Proposed Transaction.

22.    Specifically, as set forth below, the Proxy Statement fails to provide Company stockholders with material information or provides them with materially misleading information concerning: (i) Net Element's and Mullen's financial projections, which are wholly omitted, and the data and inputs underlying the financial analyses performed by the Company's financial advisor Alexander Capital; and (ii) Alexander Capital's potential conflicts of interest.

***Material Omissions Concerning Net Element's and Mullen's Financial Projections and Alexander Capital's Financial Analyses***

23.    The Proxy Statement wholly omits the financial projections for Net Element and Mullen.

24.    For example, the Proxy Statement sets forth that in connection with its fairness opinion, Alexander Capital "reviewed certain other internal financial analyses and forecasts prepared by (i) the management of Mullen relating to its business and (ii) the management of Net

Element relating to the respective business of Net Element and Mullen[.]" Proxy Statement at 95. Yet, the Proxy Statement fails to disclose any financial forecasts related to Mullen or Net Element.

25. The Proxy Statement also fails to disclose material information concerning Alexander Capital's financial analyses.

26. The Proxy Statement describes Alexander Capital's fairness opinion and the various valuation analyses performed in support of its opinion. However, the description of Alexander Capital's fairness opinion and analyses fails to include key inputs and assumptions underlying these analyses. Without this information, as described below, Net Element's public stockholders are unable to fully understand these analyses and, thus, are unable to determine what weight, if any, to place on Alexander Capital's fairness opinion in determining whether to vote in favor of the Proposed Transaction.

27. With respect to Alexander Capital's *Discounted Cash Flow Analysis*, the Proxy Statement fails to disclose: (i) the Mullen forecasts, and any adjustments Alexander Capital made thereto, utilized by Alexander Capital in the analysis; (ii) the unlevered free cash flow for years ending December 31, 2021 through 2030 as per the Mullen forecasts; (iii) quantification of the terminal year cash flow and the terminal values for Mullen; (iv) quantification of the inputs and assumptions underlying the discount rates ranging from 9.0% to 20.0%; and (v) the current outstanding shares of the Company.

28. With respect to Alexander Capital's *Precedent Transaction Analysis*, the Proxy Statement fails to disclose the implied multiples and discount rates used in the analysis.

29. With respect to Alexander Capital's *Public Comparable Analysis*, the Proxy Statement fails to disclose the individual multiples and financial metrics for each company observed in the analysis.

30. With respect to Alexander Capital's *Present Value of Future Share Price Analysis*, the Proxy Statement fails to disclose: (i) the Mullen forecasts, and any adjustments Alexander Capital made thereto, utilized by Alexander Capital in the analysis; and (ii) quantification of the inputs and assumptions underlying the (a) multiples of 15.0x and of 3.2x, and (b) range of discount factors from 9.0% to 20.0%.

31. The omission of this information renders the statements in the "Opinion of Financial Advisor" section of the Proxy Statement false and/or materially misleading in contravention of the Exchange Act.

*Material Omissions Concerning Alexander Capital's Potential Conflicts of Interest*

32. The Proxy Statement fails to disclose material information concerning potential conflicts of interest faced by the Company's financial advisor, Alexander Capital.

33. For example, the Proxy Statement fails to disclose: (i) the amount of Alexander Capital's compensation that is contingent upon consummation of the Proposed Transaction; and (ii) whether Alexander Capital has performed past services for any parties to the Merger Agreement or their affiliates, and if so, the timing and nature of the services and the amount of compensation received by Alexander Capital for providing such services.

34. Full disclosure of investment banker compensation and all potential conflicts is required due to the central role played by investment banks in the evaluation, exploration, selection, and implementation of strategic alternatives.

35. The omission of this information renders the statements in the "Opinion of Financial Advisor" section of the Proxy Statement false and/or materially misleading in contravention of the Exchange Act.

36. The Individual Defendants were aware of their duty to disclose the above-referenced omitted information and acted negligently (if not deliberately) in failing to include this information in the Proxy Statement. Absent disclosure of the foregoing material information prior to the stockholder vote on the Proposed Transaction, Plaintiff and the other stockholders of Net Element will be unable to make a sufficiently informed voting decision in connection with the Proposed Transaction and are thus threatened with irreparable harm warranting the injunctive relief sought herein.

## CLAIMS FOR RELIEF

### COUNT I

**Claims Against All Defendants for Violations of Section 14(a) of the Exchange Act and Rule 14a-9 Promulgated Thereunder**

37. Plaintiff repeats all previous allegations as if set forth in full.

38. During the relevant period, defendants disseminated the false and misleading Proxy Statement specified above, which failed to disclose material facts necessary to make the statements, in light of the circumstances under which they were made, not misleading in violation of Section 14(a) of the Exchange Act and SEC Rule 14a-9 promulgated thereunder.

39. By virtue of their positions within the Company, the defendants were aware of this information and of their duty to disclose this information in the Proxy Statement. The Proxy Statement was prepared, reviewed, and/or disseminated by the defendants. It misrepresented and/or omitted material facts, including material information about Net Element's and Mullen's financial projections, the financial analyses performed by Alexander Capital, and Alexander Capital's potential conflicts of interest. The defendants were at least negligent in filing the Proxy Statement with these materially false and misleading statements.

40. The omissions and false and misleading statements in the Proxy Statement are material in that a reasonable stockholder would consider them important in deciding how to vote on the Proposed Transaction.

41. By reason of the foregoing, the defendants have violated Section 14(a) of the Exchange Act and SEC Rule 14a-9(a) promulgated thereunder.

42. Because of the false and misleading statements in the Proxy Statement, Plaintiff is threatened with irreparable harm, rendering money damages inadequate. Therefore, injunctive relief is appropriate to ensure defendants' misconduct is corrected.

## COUNT II

### Claims Against the Individual Defendants for Violations of Section 20(a) of the Exchange Act

43. Plaintiff repeats all previous allegations as if set forth in full.

44. The Individual Defendants acted as controlling persons of Net Element within the meaning of Section 20(a) of the Exchange Act as alleged herein. By virtue of their positions as officers and/or directors of Net Element, and participation in and/or awareness of the Company's operations and/or intimate knowledge of the false statements contained in the Proxy Statement filed with the SEC, they had the power to influence and control and did influence and control, directly or indirectly, the decision-making of the Company, including the content and dissemination of the various statements which Plaintiff contends are false and misleading.

45. Each of the Individual Defendants was provided with or had unlimited access to copies of the Proxy Statement and other statements alleged by Plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected.

46. In particular, each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of the Company, and, therefore, is presumed to have had the power to control or influence the particular transactions giving rise to the securities violations as alleged herein, and exercised the same. The Proxy Statement at issue contains the unanimous recommendation of each of the Individual Defendants to approve the Proposed Transaction. They were, thus, directly involved in the making of the Proxy Statement.

47. In addition, as the Proxy Statement sets forth at length, and as described herein, the Individual Defendants were each involved in negotiating, reviewing, and approving the Proposed Transaction. The Proxy Statement purports to describe the various issues and information that they reviewed and considered—descriptions the Company directors had input into.

48. By virtue of the foregoing, the Individual Defendants have violated Section 20(a) of the Exchange Act.

49. As set forth above, the Individual Defendants had the ability to exercise control over and did control a person or persons who have each violated Section 14(a) and SEC Rule 14a-9, promulgated thereunder, by their acts and omissions as alleged herein. By virtue of their positions as controlling persons, these defendants are liable pursuant to Section 20(a) of the Exchange Act. As a direct and proximate result of defendants' conduct, Net Element stockholders will be irreparably harmed.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff demands judgment and preliminary and permanent relief, including injunctive relief, in his favor on behalf of Net Element, and against defendants, as follows:

     A.     Preliminarily and permanently enjoining defendants and all persons acting in concert with them from proceeding with, consummating, or closing the Proposed Transaction and any vote on the Proposed Transaction, unless and until defendants disclose and disseminate the material information identified above to Net Element stockholders;

     B.     In the event defendants consummate the Proposed Transaction, rescinding it and setting it aside or awarding rescissory damages to Plaintiff;

     C.     Declaring that defendants violated Sections 14(a) and/or 20(a) of the Exchange Act, as well as SEC Rule 14a-9 promulgated thereunder;

     D.     Awarding Plaintiff the costs of this action, including reasonable allowance for Plaintiff's attorneys' and experts' fees; and

     E.     Granting such other and further relief as this Court may deem just and proper.

## JURY DEMAND

Plaintiff demands a trial by jury.

Dated: August 13, 2021                      **WEISSLAW LLP**

By _____
Richard A. Acocelli
1500 Broadway, 16th Floor
New York, New York 10036
Tel: (212) 682-3025
Fax: (212) 682-3010
Email: racocelli@weisslawllp.com

*Attorneys for Plaintiff*